UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| RANDY THOMPSON, | Case No. 6:22-cv-01665-MTK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| WALKER P. INMAN, III | |
| Defendant. | |

**KASUBHAI,** United States District Judge:

Plaintiff Randy Thompson brought this diversity action against Defendant Walker Inman, alleging conversion. ECF No. 1. On December 13, 2024, the Court entered judgment against Defendant. ECF No. 114. Defendant now moves to set aside the judgment. ECF No. 115. Also before the Court is Plaintiff's Motion for Sanctions. ECF No. 132. For the reasons below, both motions are denied.

**BACKGROUND**

**I.    Commencement of Conversion Action through Case Scheduling**

Plaintiff, proceeding self-represented, commenced this conversion action on October 27, 2022.[1] Defendant, represented by counsel, answered the Complaint on January 17, 2023. ECF

---

[1] The facts underlying the merits of the action are set forth in the Court's Opinion and Order on Plaintiff's Motion for Summary Judgment, ECF No. 87, and are not repeated here.

Page 1 — OPINION AND ORDER

No. 25. In early June 2023, Counsel Justin Heideman ("Mr. Heideman") appeared and was granted pro hac vice status, representing Defendant. ECF Nos. 53, 55. Shortly after, on June 22, 2023, Plaintiff filed a Motion for an Independent Mental Health Examination of Defendant, claiming Defendant was incompetent, which Defendant opposed. ECF Nos. 56, 60. Because Plaintiff did not demonstrate how Defendant's mental condition was in controversy for the conversion claim, the Court denied Plaintiff's motion. ECF No. 58. The Court held a Rule 16 conference on August 3, 2023, during which it ordered discovery to be completed by January 5, 2024. ECF No. 69. Plaintiff served his first Requests for Admissions on Defense counsel on November 6, 2023. Decl. of Randy Thompson in Opp'n to Mot. Set Aside ("Thompson Decl.") Ex. 2, ECF No. 120.

## II. Withdrawal of Defense Counsel

On December 4, 2023, all counsel for Defendant, including Mr. Heideman, moved to withdraw. ECF Nos. 73-74. The motion cited an "irreconcilable conflict" and explained that the attorney-client relationship "has deteriorated to the point that it is irreparably broken, and the attorneys can no longer effectively represent the Defendant." *Id.*

Plaintiff emailed the Court opposing withdrawal unless Defense counsel provided an address for Defendant for future service. Thompson Decl. Ex. 3. Defense counsel replied that Defendant's address and e-mail were "listed in the certificates of service attached to the motions [to withdraw]." Thompson Decl. Ex. 4 at 1. Those documents provided an address in Georgetown, South Carolina and a yahoo.com e-mail as Defendant's updated addresses for service. ECF Nos. 73-74.

On December 6, 2023, the Court granted the Motions to Withdraw and subsequently set a status conference in light of Defendant's newly self-represented status. ECF Nos. 75-76. Defendant failed to appear at the January 9, 2024, status conference. ECF No. 78.

### III. First Dispositive Motion

On February 8, 2024, Plaintiff filed a Motion for Summary Judgment. ECF No. 82. The motion included a certificate of service indicating that Plaintiff mailed the motion to Defendant at the address that Defendant's former counsel provided. That address is Defendant's address of record. The Court also sent Defendant notice to his address of record, explaining that "If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, the case will be dismissed and there will be no trial." ECF No. 84. Defendant did not file an opposition to Plaintiff's Motion for Summary Judgment. On May 9, 2024, the Court granted Plaintiff's Motion for Summary Judgment on the issue of Defendant's liability for conversion. ECF No. 87. But the Court found that Plaintiff had failed to identify sufficient evidence to establish the value of property converted and emotional distress damages, and therefore denied Plaintiff's motion as it related to damages. *Id.* Shortly after the Court entered its Opinion and Order on Plaintiff's Motion for Summary Judgment, Plaintiff contends that Defendant posted a message on Facebook threatening to poison Plaintiff. Thompson Decl. ¶ 16, Ex. 6. That message, and Defendant's entire Facebook page, have since been deleted, but Plaintiff captured a screenshot of the message prior to its deletion. Thompson Decl. in Supp. of Mot. for Sanctions ¶¶ 4, 9, 10, ECF No. 134.

On May 9, 2024, the Court issued a scheduling order setting a June 17, 2024, status conference to discuss next steps in the case, and sent that order to Defendant at his address of record. ECF No. 88. In the weeks leading up to the status conference, Plaintiff filed a flurry of motions, including a motion to reopen discovery "for a limited purpose to add expert witness," ECF No. 95, and a motion to compel discovery and impose sanctions related to Defendant's failure to cooperate in discovery and alleged spoliation of evidence Plaintiff believed was necessary to establish damages, ECF No. 93.

At the June 17, 2024, status conference, Plaintiff appeared but Defendant did not. ECF No. 101. The Court set the matter for a jury trial to take place on January 6, 2025, and for a pretrial conference on January 2, 2025. The Court deferred the motion to compel—including associated spoliation issues—until the time of pretrial conference and trial. ECF No. 102. The Court denied the motion to reopen discovery because reopening discovery was not necessary for Plaintiff to retain an expert witness.

## IV. Second Dispositive Motion

On August 27, 2024, Plaintiff served Defendant with a Second Set of Requests for Admissions ("Second RFA") at Defendant's address of record. Mot. J. Plead. Ex. 1, ECF No. 106. Plaintiff also emailed the Second RFA to Defendant at the email address provided by Defense counsel when they withdrew. Thompson Decl. Ex. 5 at 20-21. On October 1, 2024, when Defendant did not timely respond to the Second RFA, Plaintiff emailed Defendant offering to allow additional time and warning him of the effect of not responding. *Id.* at 22. On October 7, 2024, Plaintiff again wrote to Defendant to confer on filing a dispositive motion on the issue of damages. *Id.* at 24-25. Defendant did not respond.

On October 11, 2024, Plaintiff filed a Motion for Judgment on the Pleadings. ECF No. 106. The motion contained a certificate of service indicating that Defendant had again been served with the motion at his address of record. *Id.* at 14. The motion was premised on Defendant's failure to respond to the Second RFA, but the Second RFA had not been served before the close of discovery. The Court, therefore, entered the following order on November 12, 2024:

> The Court is in receipt of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 106), which includes as an exhibit "Plaintiff's Second Set of Requests for Admission," served on Defendant August 27, 2024. This request for admission was served after the close of discovery on January 5, 2024 (ECF No. 69). However, the parties to this case are both proceeding self-represented, and the Court recognizes

> that they may therefore lack experience in navigating the legal process and understanding Court rules. On that basis, the Court allows discovery to be reopened for the sole purpose of considering Plaintiff's Second Set of Requests for Admission, and allows Defendant 14 days from receipt of this order to respond to Plaintiff's Second Set of Requests for Admission. Should Defendant fail to respond, the Court may deem the matters admitted under Fed. R. Civ. P. 36(a)(3) in its consideration of pending and future motions and proceedings in this case. In addition, because Plaintiff's Motion for Judgment on the Pleadings includes matters outside the pleadings, the Court will consider Plaintiff's motion as a Rule 56 motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). As required by that rule, the parties are permitted an additional 21 days from the date of this order to submit any material pertinent to the motion, including any declarations supporting whether Defendant responded to the Second Set of Requests for Admission. No further discovery is permitted.

ECF No. 107. The Court mailed this order to Defendant at his address of record, but it was returned as undeliverable with the message "no such street." ECF No. 111.[2] Several weeks later, on November 21, 2024, Plaintiff also sent a letter to Mr. Heideman informing him of the pending motion and urging him to re-engage in the matter on Defendant's behalf. Thompson Decl. Ex. 15. Mr. Heideman contends that he did not receive that letter. Opp'n Mot. Sanctions Ex. 24, ECF No. 138.

Defendant did not respond to either Plaintiff's motion or the Court's order. On December 6, 2024, Plaintiff filed a declaration stating that Defendant never responded to his Second RFA. ECF No. 112. On December 13, 2024, the Court issued an Opinion and Order treating Plaintiff's Motion for Judgment on the Pleadings as a Motion for Summary Judgment, and granted it, finding that damages were conclusively established by virtue of Defendant's failure to respond to the Second RFA. ECF No. 113. The Court entered judgment in Plaintiff's favor the same day. ECF No. 114.

---

[2] No other correspondence the Court sent to this address either before or after this one was returned as undeliverable.

## V.    Defendant's Status

As noted above, Defendant did not respond to any of Plaintiff's discovery requests or Court filings and did not appear for any scheduled hearings while he was self-represented. Nearly five months after judgment had been entered in Plaintiff's favor, Defendant—now again represented by pro hac vice counsel Mr. Heideman—filed the instant Motion to Set Aside Judgment. In support of his motion, Defendant provided some evidence pertaining to his location and status during the litigation. Mr. Heideman's declaration stated that Defendant was "in crisis" and at "a mental health inpatient facility in California having suffered a mental and emotional break" at some unclear time. Decl. Justin D. Heideman in Supp. Mot. Set Aside ("Heideman Decl.") ¶¶ 24-25, ECF No. 116. Mr. Heideman stated that "Defendant was not mental[sic] competent at the time." *Id.* ¶ 26.

In addition, on February 13, 2025, a Utah state court appointed Plaintiff's mother, Daisha Inman ("Ms. Inman"), as Defendant's guardian and conservator. Heideman Decl. Ex. A. The Utah state court order stated that Defendant has "permanent brain damage affecting [his] ability to manage his own affairs." *Id*. The order explained that the appointment was made at Defendant's own request, and that while Defendant "receives continuing treatment and medication for his impairment . . . [he] is at significant risk of a further lapse in his condition and requires continuing management of his affairs." *Id.*

While no other materials submitted with Defendant's motion provided any further evidence about the timing and nature of Defendant's alleged incapacitation, his reply included documentation that Defendant was admitted to a six-week residential program in Spokane, Washington on April 25, 2024. Def.'s Reply Pl.'s Resp. Mot. Set Aside ("Def.'s Reply") Ex. 1, ECF No. 124.

**VI.    Mr. Heideman's Actions Related to Defendant**

Because it is relevant to the Motion for Sanctions, the Court also recounts the evidence about Mr. Heideman's actions relative to Defendant after the Court granted Mr. Heideman's motion to withdraw as Defendant's attorney based on an "irreconcilable conflict" in December 2023. ECF Nos. 74, 75. While the motion to withdraw provided no further detail about the conflict, Mr. Heideman's submissions in opposition to the pending Motion for Sanctions indicate that the need to withdraw arose from concerns over various social media posts Defendant made regarding Mr. Heideman and his firm. Opp'n Mot. Sanctions ¶ 32, Ex. 10. Among other things, Defendant accused Mr. Heideman of various crimes and posted a photo of Mr. Heideman and his wife. *Id.* Mr. Heideman stated that Defendant demanded that he withdraw after Mr. Heideman confronted him about the social media posts. *Id.* ¶ 35.

First, in September and October 2024—after the Court granted summary judgment on liability in this case but before Plaintiff filed his dispositive motion on damages—Mr. Heideman prepared two quitclaim deeds transferring two of Defendant's Oregon properties to Ms. Inman for $10.00 each. Thompson Decl. Exs. 10, 12. Mr. Heideman contends that the first transfer was intended to cure a scrivener's error by a real estate agent, as the property was specifically purchased by Defendant for Ms. Inman but "mistakenly titled in Defendant's name," and that the second merely transferred property "from a trust entity" to Ms. Inman and that the scope of his representation was only to prepare the document. Opp'n Mot. Sanctions ¶¶ 48-53. Mr. Heideman contends that both transfers were made at the direction of Ms. Inman rather than Defendant. *Id.*

On October 18, 2024, Mr. Heideman filed a petition in Utah state court to appoint Ms. Inman as Defendant's guardian and conservator. Opp'n Mot. Sanctions Ex. 16. Both petitioners (Defendant and Ms. Inman) were represented by Mr. Heideman's firm. *Id.* Mr. Heideman explained that he "specifically indicated to [Ms. Inman] that [he] would not be willing to

Page 7 — OPINION AND ORDER

reinstate his representation of Defendant unless [Ms. Inman] was appointed as the Guardian and Conservator." Opp'n Mot. Sanctions ¶ 44. As noted earlier, the Utah court granted that petition on February 13, 2025. Heideman Decl. Ex. A. On October 28, 2025, the Utah court set aside the order granting the guardianship and conservatorship, finding that Defendant and Ms. Inman had failed to give notice of the petition to Defendant's creditors. Pl.'s Resp. and Notice, Ex. D, ECF No. 144.

On November 5, 2024—while the second dispositive motion was pending—Mr. Heideman sent a "Notice of Termination" to Plaintiff demanding that he vacate one of the properties now owned by Ms. Inman as a result of one of the $10.00 transfers. Thompson Decl. Ex. 16. That letter noted that Mr. Heideman was acting as an attorney for Ms. Inman. *Id.* On January 21, 2025, Mr. Heideman filed a Residential Eviction Complaint in Oregon state court against Mr. Thompson on behalf of Defendant and Ms. Inman. *Id.* On September 2, 2025, the Oregon state court entered judgment in favor of Plaintiff in that case, issuing a letter opinion finding that the eviction action was brought in bad faith as retaliation for the judgment entered in this federal action and that the $10.00 transfer of the property at issue was an attempt by Defendant to prevent Plaintiff from collecting on the judgment entered by this Court. Decl. Bracken McKey Supp. Pl.'s Reply Ex. 4, ECF No. 142. On December 16, 2025, Defendant moved to set aside the judgment in the eviction case based on newly discovered evidence. Def.'s Notice, Ex. A, ECF No. 143. As far as this Court is aware, that motion is still pending.

## DISCUSSION

### I.     Motion to Set Aside Judgment

Pursuant to Rule 60(b), Defendant moves the Court to set aside the Judgment and orders granting summary judgment. That rule provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Whether to grant a motion pursuant to Rule 60 is left to the discretion of the district court. *See Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1110 (9th Cir. 2011).

Defendant argues that the Court should set aside the judgment based on (A) "mistake, inadvertence, surprise, and excusable neglect" under Rule 60(b)(1) because Defendant was not properly served and lacked adequate notice; (B) fraud under Rule 60(b)(3) because Plaintiff misrepresented that he had served Defendant with all documents relevant to the Court's resolution of this case; and (C) facts justifying relief from judgment under Rule 60(b)(6).

### A. Mistake, Inadvertence, Surprise, and Excusable Neglect

Defendant argues that the Judgment and Orders granting summary judgment should be set aside under Rule 60(b)(1) "for mistake, inadvertence, surprise, and excusable neglect in that the Defendant was not properly served and lacked adequate notice." Mot. Set Aside 4, ECF. No 115. Specifically, Defendant argues that the relevant documents were not served on Defendant and that even if they were, such service was insufficient to provide actual notice because Defendant lacked capacity.

On the issue of proper service, Rule 5(b)(2)(C) provides that a paper may be served by "mailing it to the person's last known address—in which event service is complete upon

Page 9 — OPINION AND ORDER

mailing." Local Rule 83-10 imposes an obligation on self-represented parties to notify the Court and all parties whenever there is a change in mailing address. Here, the mailing address Plaintiff used to serve Defendant was provided by Defense counsel upon their withdrawal. No notice of any other address was ever filed by Defendant. While one document sent to Defendant's address of record was returned as undeliverable, Defendant provides no authority holding that renders service ineffective under the rules. The record establishes that all relevant papers were mailed to Defendant's address of record. Service was complete upon mailing and Defendant provides no legal support for his argument that service was improper under these facts.

Defendant also argues that service was insufficient to provide actual notice because he lacked mental capacity.[3] As an initial matter, Defendant provides no authority for the proposition that lack of actual notice amounts to "mistake" for purposes of Rule 60(b)(1) where service was adequate under the rules. But even if he had, there is insufficient evidence to establish that Defendant was "lack[ing] the mental capacity to understand the proceedings even if he had been served," as Defendant contends. Def.'s Reply 6.

Statements about Defendant's incapacity by individuals who are not medical professionals do not establish Defendant's capacity to understand the proceedings at the times he was served. Although Mr. Heideman's declaration asserts that Defendant was not mentally competent, Mr. Heideman is not a medical professional. Likewise, Plaintiff's reliance on testimony from Ms. Inman that Defendant was "of sound mind" in October 2024 does not

---

[3] Defendant's argument focuses on the "mistake" of making factual findings based on Defendant's failure to respond to requests for admission that were allegedly improperly served. Defendant does not appear to rely on the "excusable neglect" portion of Rule 60(b)(1). To the extent that Defendant did intend to also assert excusable neglect, he failed to discuss or apply any of the factors necessary for the Court to vacate the judgment on that basis. *See Pioneer Inv. Services Co. v. Brusnwick Associates Ltd. P'ship.*, 507 U.S. 380, 395 (1993). The Court therefore does not find excusable neglect.

establish that he *was*, in fact, competent. *See* Pl.'s Supp. Resp. ¶ 2, Ex. B, ECF No. 129. Finally, Defendant's reliance on Plaintiff's "admission" of Defendant's incapacity based on his June 2023 Motion for an Independent Mental Health Examination of Defendant is insufficient for the same reason: lay witness testimony does not establish Defendant's incapacity.

Defendant's other proffered evidence also fails to establish that Defendant was incapable of understanding the proceedings at the time the relevant documents were served. The Utah state court order establishing Ms. Inman's guardianship and conservatorship over Defendant post-dates all relevant service dates and says nothing specific about Defendant's capabilities at any particular time. Similarly, the documentation of Defendant's mental health treatment in Washington does not explain the nature or timing of any incapacity, and Defendant's expected June 2024 release under that program would have pre-dated the service of the Second RFA and subsequent developments. Defendant fails to establish any legal or factual mistake justifying relief from judgment under Rule 60(b)(1).

### B.   Fraud

Defendant also argues that the Judgment and Orders granting summary judgment should be set aside under Rule 60(b)(3) for "fraud . . . , misrepresentation, or misconduct by an opposing party" because Plaintiff's representations that he served Defendant were false. To obtain relief from judgment under Rule 60(b)(3), the moving party must prove by clear and convincing evidence that the judgment was obtained "was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004). Here, Defendant relies on Mr. Heideman's declaration that he was contacted by an Oregonian reporter who told him that Plaintiff claimed to have served all relevant documents on Mr. Heideman.

Defendant contends that this statement "contradicts" Plaintiff's certificates of service and establishes fraud.

Defendant's evidence is insufficient to establish fraud by clear and convincing evidence. Setting aside the double hearsay issues with the statement, it does not establish that Plaintiff's certificates of service were fraudulent. Plaintiff's statement that he served the papers on Mr. Heideman does not mean that he did not *also* serve them by mail as his certificates of service assert. Moreover, Mr. Heideman's own declaration undermines Defendant's argument because it states that the reporter told Mr. Heideman that "Plaintiff had represented *to this court* that all relevant documents had been served on counsel for Defendant." Heideman Decl. ¶ 29 (emphasis added). But that is not the representation that Plaintiff made to the Court. Instead, as the certificates of service make clear, Plaintiff represented to the Court that he served Defendant at his address of record. There is no evidence of fraud, let alone clear and convincing evidence from which this Court could conclude that judgment was unfairly obtained. Defendant is not entitled to relief from judgment under Rule 60(b)(3).

### C. "Any Other Reason that Justifies Relief"

Finally, Defendant asks the Court to grant him relief from judgment under Rule 60(b)(6), because he contends that the circumstances of Defendant's mental health crisis justify relief. Relief under Rule 60(b)(6) requires "extraordinary circumstances" which justify reopening the case. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210-11 (2025). Here, Defendant relies on the same evidence of his alleged incapacity as he did for his arguments related to "mistake" under Rule 60(b)(1). The evidence of Defendant's capacity and its impacts on the Court's decisions on the motions for summary judgment are deficient under Rule 60(b)(6) for the same reasons the Court found them deficient under Rule 60(b)(1). Accordingly, the Court does not find extraordinary circumstances justifying relief from judgment under Rule 60(b)(6).

Defendant has failed to present sufficient evidence or argument justifying relief from final judgment under any of the three asserted Rule 60(b) bases. The motion is denied.

## II. Motion for Sanctions

Plaintiff moves for sanctions against Defendant and his counsel, Mr. Heideman, pursuant to four separate authorities: Rule 11, Rule 37(e), 28 U.S.C. § 1927 ("Section 1927"), and the Court's inherent power to impose sanctions. The Court first addresses Plaintiff's motion as it relates to conduct implicating Rule 11, Section 1927, and the Court's inherent power to impose sanctions, and then turns to Plaintiff's spoliation allegations and request for sanctions under Rule 37(e).

### A. Sanctions under Rule 11, Section, and Inherent Authority

Rule 11(b) provides that, by presenting to a federal court a pleading or other paper, any party—including an unrepresented party—certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court's authority to impose sanctions under Rule 11 is discretionary. *See* Fed R. Civ. P. 11(c)(1) ("[T]he court *may* impose an appropriate sanction.") (emphasis added); *see also Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1488 (9th Cir. 1995) (noting that district courts have "wide discretion in determining whether Rule 11 sanctions are appropriate"). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate

sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under Section 1927 "must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (citation omitted). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted).

Finally, a federal court possesses "inherent powers," not conferred by rule or statute," to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-55 (1991)). To impose a sanction under its inherent powers, a court must find either: "(1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Bad faith may be found where conduct during litigation was "done vexatiously, wantonly, or for oppressive reasons." *Id.* The court must make an explicit finding that the sanctioned party's conduct was tantamount to bad faith. *Id.*

Here, Plaintiff's motion as it relates to these sanction authorities is based on three courses of alleged misconduct by Defendant and Mr. Heideman. The Court addresses each in turn below.

       1.    <u>Misrepresentation Regarding an "Irreconcilable Conflict"</u>

Plaintiff moves for sanctions based on Mr. Heideman's representation that he had an "irreconcilable conflict" with Defendant in December 2023 when he withdrew. In particular, Plaintiff contends that Mr. Heideman's continued representation of Defendant in other matters,

and Mr. Heideman's return in this case as Defendant's counsel, is evidence that Mr. Heideman made a false statement to the Court when he withdrew from this case.

The evidence does not support sanctions for this conduct. The fact that Mr. Heideman subsequently represented Defendant or Ms. Inman in this and other matters does not automatically lead to the conclusion that Mr. Heideman's statement that he had an irreconcilable conflict at the time of his withdrawal was a misrepresentation. Mr. Heideman explained that he withdrew following his confrontation with Defendant about concerning social media posts, and he provided explanations about the specific circumstances that he believed allowed him to represent Defendant or Ms. Inman subsequently. Considering that testimony, Plaintiff has not established that Mr. Heideman's December 2023 "irreconcilable conflict" statement was a misrepresentation.

        2.      <u>Fraudulent Transfer</u>

Plaintiff also moves for sanctions based on Mr. Heideman's assistance in the allegedly fraudulent transfers of the two Oregon properties from Plaintiff to Ms. Inman for $10.00 each. Plaintiff cites substantive Oregon law on fraudulent conveyance along with evidence he believes shows the transfers at issue were fraudulent. Defendant presents his own evidence to support his position that the transfers were not fraudulent.

None of the three cited bases for sanctions are the appropriate vehicle for addressing fraudulent transfer, which has nothing to do with the conversion action or with Defendant or Mr. Heideman's conduct *in this litigation*. Although it may affect Plaintiff's ability to collect on the judgment, it is unrelated to the litigation itself. This is not the proper forum to adjudicate Plaintiff's state law claims for fraudulent transfer. Indeed, the Court understands that, on February 28, 2025, Plaintiff filed a lawsuit in Oregon state court against Defendant and Ms. Inman for fraudulent transfer. Decl. Bracken McKey Opp'n Def.'s Mot. Set Aside ¶ 7, ECF No.

119. The Court declines to conduct parallel fraudulent transfer litigation in the guise of a sanctions motion.

### 3. Misrepresentations Relating to Motion to Set Aside Judgment

Finally, Plaintiff seeks sanctions for several alleged misrepresentations by Defendant and Mr. Heideman relating to the Motion to Set Aside Judgment. In particular, Plaintiff argues that Defendant and Mr. Heideman misrepresented Defendant's mental status, the timing of Defendant and Mr. Heidman's notice of the Judgment entered in this case, Mr. Heideman's ability to act on Defendant's behalf, and Defendant's location at times relevant to the Court's resolution of the Motion to Set Aside Judgment.

In support of his motion, Plaintiff identifies various statements by Mr. Heideman in which in Mr. Heideman appears to contradict himself. For example, Mr. Heideman's statement to an Oregonian reporter in December 2024 contradicts his testimony that he did not represent Defendant after his withdrawal in this case until after the guardianship and conservatorship was established in February 2025. Similarly, Mr. Heideman represented to this Court in his Motion to Set Aside Judgment that Defendant received mental health treatment in California when, in fact, he received that treatment in Washington.

The conduct outlined in Plaintiff's motion does not warrant sanctions under the three authorities cited. The evidence is insufficient to establish bad faith for purposes of Section 1927 sanctions or sanctions under this Court's inherent authority. And although a finding of bad faith is not required to award sanctions under Rule 11, that rule "is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A–C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). The Court is not convinced that the circumstances here warrant Rule 11 sanctions. While the evidence does show Mr. Heideman has displayed some lack of care for factual accuracy, that carelessness does not appear to be anything beyond negligent, and none of

the misrepresentations at issue pertain to facts that have any significant bearing on the Court's resolution of the motions before it. Plaintiff's Motion for Sanctions based on this conduct is denied.

### B. Rule 37(e) Spoliation Sanctions

Pursuant to Rule 37(e), Plaintiff also moves for sanctions based on Defendant's deletion of his Facebook account, which contained images and messages relevant to liability and the Motion to Set Aside Judgment. Sanctions are available under Rule 37(e) when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." If the moving party proves those elements, then:

> Two categories of sanctions exist. First, where the district court finds that the loss of information has prejudiced the moving party, the district court may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Second, where the district court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the district court may require an adverse evidentiary presumption, dismiss the case, or enter default judgment. Fed. R. Civ. P. 37(e)(2).

*Newberry v. County of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018).

It is unclear to the Court whether Plaintiff seeks sanctions pursuant to Rule 37(e)(1) or Rule 37(e)(2). In either event, however, sanctions are not warranted. With respect to Rule 37(e)(1), Plaintiff was not prejudiced because the Court has already ruled in his favor both on liability and on the Motion to Set Aside Judgment. As for Rule 37(e)(2), Plaintiff provides no evidence that the Facebook page at issue was destroyed with the intent to deprive Plaintiff of the information's use in this litigation. Without such evidence, sanctions under Rule 37(e) are unwarranted and are therefore denied.

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Set Aside Judgment (ECF No. 115) is DENIED. Plaintiff's Motion for Imposition of Sanctions (ECF No. 132) is DENIED.

DATED this 5th day of March 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge
